IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| The Nowlan Family Trust,<br><br>      *Plaintiff,*<br><br>    v.<br><br>Herman & Geer Communications, Inc. d/b/a Hermes Press<br><br>      *Defendant.* | Case No. 2:16:MC-00214 |

**NOWLAN FAMILY TRUST'S REPLY TO HERMAN & GEER COMMUNICATIONS, INC. D/B/A HERMES PRESS RESPONSE AND OBJECTIONS TO NOWLAN FAMILY TRUST'S MOTION TO COMPEL**

## I. INTRODUCTION

The Nowlan Family Trust ("NFT") is seeking to compel compliance with a subpoena served on Herman & Geer Communications, Inc. d/b/a Hermes Press ("Hermes Press"). Hermes Press is a key witness in Civil Action No. 15-6231, currently in the Eastern District of Pennsylvania.

The Nowlan Family Trust filed its Motion to Compel Production of Documents in Compliance with a Subpoena ("NFT's Motion")(ECF No. 1) on November 11, 2016 in the U.S. District Court for the Western District of Pennsylvania (Case No. 2:16-mc-01038-MRH). Hermes Press filed its Response and Objections to NFT's Motion to Compel Production of Documents in Compliance with a Subpoena ("Opposition")(ECF No. 8) on November 30, 2016. The Western District of Pennsylvania then transferred the case to the Eastern District of Pennsylvania

1

on December 2, 2016. (ECF No. 9). This Reply Brief addresses issues newly raised in the Opposition.

## II.   ARGUMENT

### A. The Nowlan Family Trust Properly Served the Subpoena

Hermes Press' arguments with respect to service via email of the July 18, 2016 subpoena are merely a smokescreen attempting to confuse the issue before the Court. On or about July 25, 2016, Andrew Olek informed counsel for NFT that he was representing Hermes Press and Daniel Herman was not representing Hermes Press regarding the subpoena.  See Declaration of John J. O'Malley ("O'Malley Decl."), ¶10.  On July 28, 2016, Andrew Olek objected to the subpoena on the grounds that it was served by electronic mail and advised that he would not accept service on behalf of Hermes Press. See O'Malley Decl. ¶11.  The subpoena was withdrawn by NFT on July 28, 2016. See O'Malley Decl. ¶12.

Rule 45 of the Federal Rules of Civil Procedure, states that "[s]erving a subpoena requires delivering a copy to the named person." *See* FED. R. CIV. P. 45(b)(1). The second subpoena, which is the subpoena at issue in this matter, was personally served via hand delivery on Hermes Press by serving Daniel Herman on August 2, 2016 in the courtroom of the Honorable Wendy Beetlestone prior to a hearing in the matter of the *Dille Family Trust v. the Nowlan Family Trust* (C.A. No. 15-6231)("the related action").  See O'Malley Decl. ¶¶13, 14 and 17.[1]  Although counsel for Hermes Press has ignored this point, it is NFT's understanding that in

---

[1]   Concurrently with filing this Reply, NFT has filed a formal Proof of Service. A copy of the Proof of Service is attached as Exhibit B to the O'Malley Declaration.

addition to being counsel for the Dille Family Trust ("DFT") and Hermes Press in the related action and this action, Mr. Herman is also the president and publisher of Hermes Press. See O'Malley Decl. ¶8.

Hermes Press also is attempting to elevate form over substance in arguing that service of the August 2, 2016 subpoena was improper because counsel for Hermes Press, Andrew Olek, was addressed on the certificate of service served with the August 2, 2016 subpoena. As noted in the O'Malley Declaration, it was the understanding of NFT's counsel that Andrew Olek was to attend the hearing with the Court on August 2, 2016, and a certificate of service was accordingly prepared on that basis. See O'Malley Decl. ¶15.  However, NFT never intended to effect service on Hermes Press through Mr. Olek because NFT understood that Daniel Herman is the publisher and president of Hermes Press. See O'Malley Decl. ¶15. The reference to "c/o" of Andrew Olek" was a typographical error on the face of the subpoena. See O'Malley Decl. ¶16.

The fact remains that an officer of Hermes Press was personally served with a subpoena specifically directed to Hermes Press on August 2, 2016.  Hermes Press does not deny receiving the subpoena and presented its objections on August 11, 2016.  Accordingly, service of the second subpoena on August 2, 2016 was proper and complied with Rule 45.  See *Palacio v. Citimortgage, Inc.*, 2013 U.S. Dist. LEXIS 39132 (S.D. Fla. 2013) ("When serving a subpoena on a corporation, courts look to Rule 4(h) of the Federal Rules of Civil Procedure, and 'have held that personal service of a subpoena is made upon a corporation by serving '[a]n officer, a

managing or general agent, or any other agent authorized by appointment or by law to receive service . . .' ' ") (quoting *Khachikian v. BASF Corp.*, 1994 U.S. Dist. LEXIS 2881 (N.D.N.Y. 1994))(quoting Fed. R. Civ. P. 4(h)(1)(B)).

### B. NFT's Motion for Sanctions Pursuant to Rule 37 is Proper.

Hermes Press makes the somewhat incredible argument that NFT did not meet and confer in an attempt it to resolve the dispute. The O'Malley Declaration disproves that contention. As set forth in the declaration, counsel for NFT sent repeated correspondence to Andrew Olek in an attempt to resolve the dispute between August 11, 2016 and October 14, 2016. See O'Malley Decl. ¶¶ 18 - 25. Although NFT requested substantiation and detailed explanations of Hermes Press' objections in its August 15, 2016 letter, Hermes Press never provided any evidence to substantiate its objections or even address NFT's counter-points from its August 15, 2016 letter. See O'Malley Decl. ¶¶19, 22 and 23. Even so, on October 18, 2016, counsel for NFT spoke with Andrew Olek. See O'Malley Decl. ¶24. During the call, Mr. Olek made it clear that Hermes Press would not reconsider its objections, and the parties agreed that Mr. Olek would serve additional objections for the sake of clarity which he did on October 19, 2016. See O'Malley Decl. ¶25. Given these facts, any further attempts to resolve the issues were pointless. Moreover, NFT respectfully submits that Hermes Press' Opposition clearly demonstrates the futility of any further attempts to meet and confer.

Moreover, regarding the issue of a lack of Rule 37 certification, as indicated below, the Memorandum of Law in support of NFT's Motion to Compel, included the

4

following certification: "Pursuant to Federal Rules of Civil Procedure 37(a)(1), the Nowlan Family Trust has in good faith conferred with Hermes Press' counsel in an effort to resolve these issues but no agreement could be reached." See Exhibits 4 – 9." See NFT's Motion (Memorandum of Law at 3).  Nevertheless, a formal Rule 37 Certification is attached hereto as Exhibit A.

### C. Hermes Press's Responses and Objections Are without Merit.

A simple review of Hermes Press' objections establishes that the objections are unsubstantiated, without merit and are not made in good faith.

#### 1. Hermes Press's Assertion of Attorney Client Privilege is not Asserted in Good Faith.

Hermes Press has asserted attorney client privilege as a basis for objecting to the subpoena.  The claim of attorney client privilege is premised on the joint defense privilege recognized by the Third Circuit in *In re Bevill, Bresler & Schulman Asset Management Corp.*, 805 F.2d 120, 126 (3d Cir. N.J. 1986). As Hermes Press, correctly state's in order to establish the existence of a joint defense privilege, the party asserting the privilege must show that (1) the communications were made in the course of a joint defense effort, (2) the statements were designed to further the effort, and (3) the privilege has not been waived. *Id.*

"The party asserting the privilege has the burden of making a *prima facie* showing that the privilege protects the information that the party intends to withhold." *In re Grand Jury Investigation,* 974 F.2d 1068, 1070 (9th Cir. 1992); *Ruehle*, 583 F.3d 608 (citing *United States v. Munoz,* 233 F.3d 1117, 1128 (9th Cir. 2000).  Therefore, the party asserting the privilege must demonstrate that the

documents adhere to the essential elements of the attorney-client privilege. *Id.* This demonstration is generally accomplished by submitting a log that identifies (a) the attorney and client involved, (b) the nature of the document, (c) all persons or entities shown on the document to have received or sent the document, (d) all persons or entities known to have been furnished the document or informed of its substance, and (e) the date the document was generated, prepared, or dated. *Id.*

Even though, NFT specifically requested a privilege log on several occasions, Hermes Press never provided a privilege log in this case. See O'Malley Decl. ¶23. Hermes Press cannot identify or explain how any document or area of anticipated testimony is privileged. Accordingly, Plaintiff has not identified categories of documents, recipients, document subjects, or any other information that would allow either NFT or this Court to address the privilege claims, and they must fail.

In addition, with respect to the broader issue of the assertion of the joint defense privilege, Hermes Press has similarly failed to establish the applicability of that privilege. Although Mr. Herman provided a declaration in support of Hermes Press's response, Hermes Press has produced no evidence to support a claim of a joint defense privilege, that there was any anticipation of litigation, or even that the DFT and Hermes Press had agreed to pursue a joint defense strategy. Accordingly, Hermes Press's assertion of the joint defense privilege must fail. *In re Bevill,* 805 F.2d at 126 (A party cannot invoke a joint defense privilege when it produces no evidence that the parties have agreed to pursue a joint defense strategy).

### 2. The Subpoena is Narrowly Tailored.

As with Hermes Press' objections on the basis of privilege, the non-privilege objections set forth by Hermes Press are wholly conclusory and without evidentiary support. In order to demonstrate undue burden, the party opposing discovery "must provide affirmative proof in the form of affidavits or record evidence." *In re Sulfuric Acid Antitrust Litig.*, 231 F.R.D. 351, 361 (N.D. Ill. 2005). The lack of any factual basis was raised in NFT's Motion (Memorandum of Law at 6 – 7) and Hermes Press has not even tried to meet that burden in its Opposition.

Instead, Hermes Press relies on conclusory allegations that responding to the request would "bring business operations to a complete halt for weeks" and the requests for "**ALL**" document pertaining to a particular request is unduly burdensome. See Opposition at ¶¶58 and 61. However, this argument ignores the fact that each request, as noted in NFT's Motion (Memorandum of Law at 6), is narrowly tailored and seeks information directly relevant to DFT's claims for NFT's affirmative defenses. Moreover, NFT is not conducting a fishing expedition of Hermes Press's other businesses. The universe of documents sought is reasonably restricted by the fact that each request is limited by a reference to "BUCK ROGERS" or "DFT."

### 3. The Subpoena Is Within the Scope of This Case.

Hermes Press also objects on the grounds that the subpoena was "purportedly" served prior to this Court's September 16, 2016 Order (ECF No. 55) and is thus overly broad given the narrower scope of the case after the Court's

order. However, once again, as with the claim of privilege an undue burden, Hermes Press have failed to identify a single request that does not fall within the scope of the current posture of the case.

### 4. NFT Has Properly Asserted the Financial Interest of Daniel Herman and Louise Geer in this Litigation.

DFT has made it clear in this case from the very beginning that it is relying upon the publication of *Buck Rogers in the 25th Century: Volume 1* ("Buck Rogers Works") by Hermes Press to support its claim of trademark priority in this case. See O'Malley Decl. ¶¶27. Hermes Press purportedly publishes their Buck Rogers Works by virtue of a license with DFT. See O'Malley Decl. ¶¶26 - 28. Clearly, Hermes Press will financially benefit if they can continue the DFT license.

It is believed that DFT's trustee Louise Geer and DFT and Hermes Press' counsel Daniel Herman are officers of Hermes Press. See O'Malley Decl. ¶¶5 and 8. Louise Geer is also married to Daniel Herman and is believed to be an attorney and shareholder in Geer and Herman, P.C. which is Daniel Herman's law firm as well. See O'Malley Decl. ¶¶4, 6, and 7. In addition, given that the legal name of Hermes Press is Herman & Geer Communications, Inc., it is reasonable to suppose that that Daniel Herman and Louise Geer may have some financial and/or ownership interest or stake in Hermes Press and will potentially benefit or be harmed by the determination of trademark rights in this case.

Furthermore, the close relationship between NFT and Hermes Press is demonstrated through Hermes Press Opposition as it is replete with examples of counsel for Hermes Press conflating and intermixing DFT for Hermes Press.

> 28. In addition to NFT's failure to make a good faith attempt to resolve the dispute, **DFT's** responses and objections were substantially justified.
>
> ***
>
> 34. Accordingly, because **DFT's** objections were both timely and justified, this Court should not award sanctions.
>
> ***
>
> 42. In the instant action, this Court would be required to impose appropriate sanctions against NFT, and not **DFT**, if the Court were to find a violation of NFT's duty, which essentially is the basis for many of **DFT's** objections.

See Hermes Press Opposition (emphasis added). Hermes Press' counsel's confusion is reflective of the tangled and intermingled web between and among DFT, Hermes Press, Geer and Herman, P.C., Daniel Herman, and Louise Geer. See O'Malley Decl. ¶¶3 – 8.

In view of the foregoing, NFT' requests seeking to identify the ownership structure of Hermes Press and any contracts they may have with DFT or its beneficiaries is entirely reasonable inquiry as it goes to issue of the credibility of Louise Geer who will testify as the DFT trustee and may raise issues of whether Daniel Herman is properly a witness in this case.

### D. NFT Should Be Awarded Its Fees and Expenses Hermes Press' Geer's Objections are Without Substantial Justification.

A court may sanction either a party, or a person properly served with a subpoena, for opposing discovery requests such as subpoenas without substantial justification. Fed. R. Civ. P. 37(a)(5); *MGA Entm't, Inc. v. Nat'l Prods.*, Civil Action No. CV 10-07083 JAK (SSx), 2012 U.S. Dist. LEXIS 7215, at **3-4 (C.D. Cal. Jan. 23, 2012) (granting party's request for sanctions in the form of awarding attorneys' fees and costs after finding that opposing party lacked of substantial

justification for its opposition); *Mt. Hawley Ins. Co. v. Felman Prod.,* 2010 U.S. Dist. LEXIS 30818, 2010 WL 1404107 (S.D. W. Va. Mar. 30, 2010) (holding that a finding of bad faith is not required to award attorneys' fees, only lack of substantial justification for the opposition).

NFT repeatedly attempted in good faith to resolve the subpoena dispute with Hermes Press. When objections were first served by Hermes Press, NFT raised the same problems with Hermes Press's objections that remain unaddressed in Hermes Press Opposition. Hermes Press has had multiple opportunities to substantiate its objections, but has failed to do so. The only reasonable explanation for Hermes Press failure to properly respond to the subpoena is that counsel for DFT and Hermes Press is seeking to delay discovery and increase the cost and expenses to NFT.

Hermes Press' objections are without substantial justification and an award of sanctions pursuant to Rule 37 is appropriate in this case.

### III. CONCLUSION

For the reasons set forth above, the Nowlan Family Trust respectfully requests that this Court grant the Nowlan Family Trust's motion.

Date: December 7, 2016             Respectfully submitted,

                                                         s/John J. O'Malley
                                                         John J. O'Malley (Pa ID. 68,222)
                                                         United Plaza, 30 South 17th Street
                                                         Philadelphia, Pennsylvania 19103
                                                         Tel: (215) 568-6400
                                                         jomalley@vklaw.com